# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**MAUREEN M. HENTZ,**

    **Plaintiff,**

v.                        Case No: 6:18-cv-1327-Orl-31GJK

**KIMBALL TRANSPORTATION, INC.,
RYAN KIMBALL, BRIAN KIMBALL and
COUSINS LOGISTICS, INC.,**

    **Defendants.**

# ORDER

Defendant Cousins Logistics, Inc. (Cousins) removed this case from the Ninth Judicial Circuit in and for Osceola County, Florida to this Court on August 14, 2018. (Doc. 1). On September 7, 2018, Plaintiff Maureen M. Hentz (Hentz) filed a Motion to Remand and for Attorney's Fees. (Doc. 20). Both Cousins and Defendants Kimball Transportation, Inc., Ryan Kimball, and Brian Kimball filed Responses in Opposition to Hentz's Motion (Docs. 32, 35). On October 12, 2018, Hentz filed a Reply to both Responses. (Doc. 40). Hentz's Motion to Remand and for Attorney's Fees is now ripe for consideration.

**I.    Introduction**

On July 20, 2015, a tractor-trailer driven by Ryan Kimball crashed into the back of a vehicle driven by Brian Hentz. (Doc. 20 at 2). On that date, Ryan Kimball was driving a tractor-trailer owned by Brian Kimball and he was hauling a load under Kimball Transportation, Inc.'s motor carrier authority. (Id.). Cousins served as the broker for Kimball Transportation, Inc. in arranging the load hauled by Ryan Kimball on the day of the

crash. (Id.). As a result of the crash, Brian Hentz suffered a traumatic brain injury and Maureen Hentz was appointed his guardian. (Id.). Hentz subsequently filed the instant lawsuit in the Circuit Court of the Ninth Judicial Circuit in and for Osceola County, Florida. (Id. at 2–3).

In her First Amended Complaint in state court, Hentz sued: (1) Ryan Kimball for negligence; (2) Kimball Transportation, Inc. for active negligence and vicarious liability for the actions of Ryan Kimball; (3) Brian Kimball for strict liability as the truck owner; (4) Cousins for negligent hiring as a broker and vicarious liability for the actions of the Kimball Defendants; and (5) all Defendants for loss of consortium. These are all state law claims. Cousins subsequently removed the entire case to this Court, arguing that this Court has federal question jurisdiction over the entire action because Hentz's claims against it are completely preempted by federal law. Hentz disagrees, arguing that—at most—Cousins' claims are subject to ordinary preemption, which does not confer federal question jurisdiction. For their part, the Kimball Defendants admit the claims against them are not subject to federal question jurisdiction, but they urge this Court to exercise its discretionary supplemental jurisdiction and retain the state law claims filed against them because they are related to Cousins' claims. The parties also dispute whether Hentz is entitled to recover her fees and costs incurred in responding to Cousins' removal of the case.

## II. Legal Standard

Removal jurisdiction "raises serious federalism concerns." Univ. of S. Ala. v. Am. Tobacco Co., 168 F.3d 405, 411 (11th Cir. 1999). Federal courts are thus "directed to construe removal statutes strictly." Id. (citing Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108–09 (1941)). The Eleventh Circuit has instructed that "all doubts about jurisdiction should be resolved in favor of remand to state court." Id. (citing Burns v.

Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir. 1994)).  In determining whether federal jurisdiction exists, the burden "falls on the party attempting to invoke the jurisdiction of the federal court."  Lee Mem'l Health Sys. v. Blue Cross & Blue Shield of Fla., Inc., 248 F. Supp. 3d 1304, 1309 (M.D. Fla. 2017) (citing McNutt v. Gen. Motors Acceptance Corp. of Ind., 298 U.S. 178, 189 (1936)).

Generally, the "test to determine if federal question jurisdiction exists is whether a federal question appears on the face of the well-pleaded complaint."  Id. (citing Gables, Inc. v. Blue Cross & Blue Shield of Fla, Inc., 813 F.3d 1333, 1337 (11th Cir. 2015)).  However, complete preemption is a "narrow exception to the well-pleaded complaint rule and exists where the preemptive force of a federal statute is so extraordinary that it converts an ordinary state law claim into a statutory federal claim."  Gables, 813 F.3d at 1337 (internal quotation marks omitted).  The "removing party bears the burden of demonstrating complete preemption and, where jurisdiction is not absolutely clear, the Eleventh Circuit favors remand."  Lee Mem'l Health Sys., 248 F. Supp. 3d at 1310 (internal quotation marks omitted).

## III. Discussion

### A. Complete Preemption

The two claims Hentz asserted against Cousins do not raise federal issues on their face.  In other words, Hentz's claims do not arise "under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  Removal, therefore, would only be proper if Cousins could show that federal law completely preempted Hentz's state law claims.[1]  It cannot.

---

[1] In order to provide a basis for federal jurisdiction, federal law must completely preempt state law.  Complete preemption is distinct from ordinary preemption.  Ordinary

3

The federal statute at issue here is the Federal Aviation Administration Authorization Act (FAAAA). That act provides, in relevant part, that "a State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . or any motor private carrier, broker, or freight forwarder with respect to the transportation of property." 49 U.S.C. § 14501(c)(1). Cousins argues that the phrase "price route, or service" is broad enough to completely preempt state law claims like the negligent hiring and vicarious liability claims asserted against it here. (Doc. 32 at 2). Hentz argues that neither claim is completely preempted. (Doc. 20 at 15).

The Supreme Court has cautioned that "complete preemption can be found only in statutes with 'extraordinary' preemptive force." Geddes v. Am. Airlines, Inc., 321 F.3d 1349, 1353 (11th Cir. 2003) (quoting Caterpillar Inc. v. Williams, 482 U.S. 386, 393 (1987)). That is because, unlike ordinary preemption, complete preemption is a "narrowly drawn jurisdictional rule for assessing federal removal jurisdiction when a complaint purports to raise only state law claims." Id. Assessing a claim of complete preemption requires a court to "look[] beyond the complaint to determine if the suit is, in reality, purely a creature of federal law, even if state law would provide a cause of action in the absence of the federal law." Id. Complete preemption requires Congress to have "so completely pre-empt[ed] a

---

preemption "may be invoked in both state and federal court as an affirmative defense to the allegations in a plaintiff's complaint." Geddes v. Am. Airlines Inc., 321 F.3d 1349, 1352 (11th Cir. 2003). While the defense of ordinary preemption "asserts that the state claims have been substantively displaced by federal law," it does not provide a basis for federal jurisdiction because "a case may not be removed to federal court on the basis of a federal defense, including that of federal preemption." Id. at 1352–53.

particular area that any civil complaint raising this select group of claims is necessarily federal in character." Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 63–64 (1987).

Complete preemption is a rare occurrence. The Supreme Court and the Eleventh Circuit have found complete preemption under only three statutes: (1) Section 301 of the Labor Management Relations Act; (2) Section 502 of the Employee Retirement Income Security Act of 1974 (ERISA); and (3) Sections 5197 and 5198 of the National Bank Act. See generally Beneficial Nat. Bank v. Anderson, 539 U.S. 1 (2003). Each of those statutes evidenced the "extraordinary preemptive force" that the Supreme Court requires to "manifest in the clearly expressed intent of Congress." Geddes, 321 F.3d at 1353; see also Beneficial, 539 U.S. at 7–8.

When evaluating complete preemption, the first task is to "identify the domain expressly pre-empted." Dan's City Used Cars, Inc. v. Pelkey, 569 U.S. 251, 260 (2013). Ordinarily, this task requires a court to "focus first on the statutory language, which necessarily contains the best evidence of Congress' pre-emptive intent." Id. (internal quotation marks omitted). Fortunately, the Supreme Court has already identified the domain preempted by this statute. The FAAAA preempted state trucking regulation because Congress found "state governance of intrastate transportation of property had become unreasonably burdensome to free trade, interstate commerce, and American consumers." Id. at 256. The Supreme Court further instructed that the phrase "'related to' [in the text of § 14501(c)] embraces state laws 'having a connection with or reference to' carrier 'rates, routes, or services' whether directly or indirectly." Id. at 260 (quoting Rowe v. New Hampshire Motor Transp. Assoc., 552 U.S. 364, 370 (2008)). But the Court warned that "the breadth of the words 'related to' does not mean the sky is the limit . . . caution[ing]

that § 14501(c)(1) does not preempt state laws affecting carrier prices, routes, and services 'in only a tenuous, remote, or peripheral . . . manner.'" Id. at 260–61 (quoting Rowe, 552 U.S. at 371).

Much of the Supreme Court's interpretation of the FAAAA flows from the Court's interpretations of the Airline Deregulation Act of 1978 (ADA) because the FAAAA copied nearly all of the ADA's preemption provision. See id. at 255–56. But the FAAAA's preemption provision contains one phrase the ADA's preemption provision does not—a phrase of paramount importance. According to the Supreme Court, the FAAAA "contains one conspicuous alteration—the addition of the words 'with respect to the transportation of property.'" Id. at 261. The addition of this phrase "massively limits the scope of preemption' ordered by the FAAAA." Id. (quoting City of Columbus v. Ours Garage & Wrecker Serv., Inc., 536 U.S. 424, 449 (2002) (Scalia, J., dissenting)). Thus, "for purposes of FAAAA preemption, it is not sufficient that a state law relates to the 'price, route, or service' of a motor carrier in any capacity; the law must also concern a motor carrier's transportation of property." Id.

Cousins' attempts to classify Hentz's state law negligence claims stemming from a traffic crash as relating to a route or service *and* concerning transportation of property are unpersuasive. Two principal reasons persuade the Court that the FAAAA did not completely preempt Hentz's claims.

First, Congress did not intend to preempt ordinary state law negligence claims when it enacted the FAAAA. When analyzing preemption, "[t]he purpose of Congress is the ultimate touchstone." Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 138 (1990) (internal quotation marks omitted). Here, Congress' intent in enacting § 14501(c) is clear:

6

"Concerned that state regulation impeded the free flow of trade, traffic, and transportation of interstate commerce, Congress resolved to displace certain aspects of the State regulatory process. The target at which it aimed was a State's direct substitution of its own governmental commands for competitive market forces in determining (to a significant degree) the services that motor carriers will provide." Dan's City Used Cars, 569 U.S. at 263. In enacting the FAAAA, Congress intended to deregulate the trucking industry—not to preempt state law negligence claims stemming from trucking accidents. Cf. Charas v. Trans World Airlines, Inc., 160 F.3d 1259, 1261 (9th Cir. 1998) (en banc) (noting that in enacting the analogous ADA, Congress "intended to preempt only state laws and lawsuits that would adversely affect the economic deregulation of the airlines and the forces of competition within the airline industry [but that] Congress did not intend to preempt passengers' run-of-the-mill personal injury claims"); see also Mann v. C. H. Robinson Worldwide, Inc., No. 7:16-cv-00102, 2017 WL 3191516, at *7 (W.D. Va. July 27, 2017) (noting that a negligent hiring claim "does not have anything more than a tenuous, remote, or peripheral connection to the price, route, or service of a broker" (internal quotation marks omitted)).

Second, the FAAAA does not provide any federal remedies for Hentz's claims. In finding that § 502 of ERISA completely preempted state law, the Supreme Court noted that the provision "set forth a comprehensive civil enforcement scheme." Ingersoll-Rand Co., 498 U.S. at 144. The Court further noted that Congress' policy choices in including "certain remedies and [excluding] others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA." Id. The "six carefully integrated civil

enforcement provisions found in § 502(a) of the statute . . . provide strong evidence that Congress did not intend to authorize other remedies. . . ." Id.

Similarly, Congress' decision not to provide express remedies for Hentz's claims provides compelling evidence that Congress did not intend to completely preempt this area of law. Cf. Hodges v. Delta Airlines, Inc., 44 F.3d 334, 338 (5th Cir. 1995) (en banc) (noting that Congress' failure to provide remedies in the ADA for injuries stemming from negligent acts "takes on added significance" because it is "difficult to believe that Congress would, without comment, remove all means of judicial recourse for those injured by illegal conduct"). Both the clear congressional intent and the lack of express federal remedies clearly indicate that Congress did not intend to preempt negligence claims stemming from traffic crashes involving tractor-trailers.

Finally, Cousins' citation to Luccio v. UPS, Co. is not persuasive. No. 9:16-CV-81703-RLR, 2017 WL 412126 (S.D. Fla. Jan. 31, 2017). Cousins asserts that Luccio is directly on point and this Court should consider it exceedingly persuasive. Not so. Luccio involved a claim against UPS relating to its allegedly negligent handling of Plaintiffs' cryopreserved embryos. Id. at *1. The Luccio court held that negligence claims relating to the storage and handling of goods, when those services are related to the movement of property, are preempted by the FAAAA. Id. Plainly, damage to transported goods relates directly to the "price, route, or service of [a] motor carrier . . . with respect to the transportation of property." § 14501(c). A claim of damage to transported goods is far different from a negligence claim stemming from a traffic crash. Luccio, therefore, does not alter the Court's holding that Congress did not intend to completely preempt negligence claims relating to tractor-trailer traffic crashes when it enacted the FAAAA.

### B. Attorney's Fees and Costs

In conjunction with a remand order, a district court may require "payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). Generally, "absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." Bauknight v. Monroe Cty, Fla., 446 F.3d 1327, 1329 (11th Cir. 2006) (citing Martin v. Franklin Capital Corp., 546 U.S. 132, 136 (2005)).

Cousins lacked an objectively reasonable basis for removal. While it is true that the Eleventh Circuit has not directly addressed the interplay between the FAAAA and state negligence actions stemming from trucking-related traffic crashes, a review of relevant Supreme Court case law clearly shows that Congress did not intend to completely preempt such claims. Supreme Court precedent indicated that Congress intended to deregulate the trucking industry by passing the FAAAA—this has nothing to do with liability for traffic crashes. Moreover, the lack of an express federal remedy further indicates that Congress did not intend to completely preempt the type of negligence claims Hentz asserts. Cousins' only basis for removal was complete preemption—and relevant law clearly indicates that Congress has not completely preempted the types of claims at issue here. Cousins thus lacked an objectively reasonable basis for seeking removal of this state law negligence action. Hentz, therefore, is entitled to attorney's fees and costs incurred in responding to Cousins' removal.

## IV. Conclusion

In enacting the FAAAA, Congress did not intend to completely preempt ordinary state law negligence claims stemming from tractor-trailer traffic accidents. Cousins thus had no objectively reasonable basis for seeking removal of Hentz's state law claims.

Because Hentz's claims are state law claims that are not completely preempted by federal law, this Court lacks jurisdiction over this case.

Accordingly, it is **ORDERED** as follows:

1. Hentz's Motion to Remand and for Attorney's Fees (Doc. 20) is **GRANTED**.

2. Attorney's fees and costs will be taxed against Cousins. The parties have 15 days to reach agreement in this regard. If no agreement is reached, Hentz may file her application for fees and costs by December 5, 2018.

3. Once the issue of fees and costs is resolved, this case will be remanded to state court, and thereafter the file will be closed.

**DONE** and **ORDERED** in Orlando, Florida, on November 14, 2018.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record
Unrepresented Parties